FILED
97 AUG -4 AM 9:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

BONNIE W. MITCHELL,      }
    Plaintiff,           }
                         }
v.                       }   CASE NO. CV 95-B-2740-NW
                         }
CRAVEN CROWELL, et al.,  }
                         }
    Defendants.          }

ENTERED
AUG 04 1997

MEMORANDUM OPINION

This matter is before the court on the Motion for Reconsideration of Summary Judgment filed by plaintiff Bonnie W. Mitchell ("plaintiff Mitchell" or "plaintiff"). Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that plaintiff's motion is due to be denied.

On September 30, 1996, the court entered a Memorandum Opinion and Order in which it granted defendants' motion for summary judgment,[1] and denied plaintiff's motion brought pursuant to FED. R. CIV. P. 56(f). Thereafter, plaintiff filed the motion for reconsideration presently before the court. Because the Memorandum Opinion entered on September 30, 1996 contains a detailed review of the facts relevant to this dispute, the court will not reiterate those facts here, but will instead proceed to a substantive discussion of plaintiff's motion for reconsideration.

---

[1] Defendant originally filed a Motion to Dismiss, but the court converted this Motion into a Motion for Summary Judgment on January 16, 1996.

## I. STANDARD OF REVIEW

"'A motion for reconsideration must do two things. First, it must demonstrate some reason why the court should reconsider its prior decision. Second, it must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993) (citations omitted). "The court will not reconsider a previous ruling when the party's motion fails to raise new issues and instead, only relitigates what has already been found lacking." *Int'l Ship Repair v. St. Paul Fire & Marine*, 922 F. Supp. 577, 579 (M.D. Fla. 1996) (citation omitted). "Courts have recognized three (3) grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Id.*, (citing *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981)).

## II. DISCUSSION

In the case at bar, plaintiff, apparently, brings her motion for reconsideration based upon the third justification, the need to correct clear error or manifest injustice. Specifically, plaintiff raises the following arguments in support of her contention that the court erred by granting defendants' motion for summary judgment: (1) this court relied upon the wrong standard in determining the burden-shifting analysis under the Rehabilitation Act; (2) the October 29, 1992 amendments to the Rehabilitation Act incorporate the broader standards of the ADA, and thus, supersede any limitations imposed upon plaintiff's transfer rights under 29 C.F.R. § 1614.203; (3) plaintiff has not had an opportunity to perform discovery regarding the term "appointing authority"; (4) plaintiff is entitled to conduct discovery on the qualifications for and essential functions of, the vacant positions for which she is arguably qualified; and (5)

2

plaintiff's presentation of direct evidence of discrimination renders summary judgment inappropriate. Because the court is of the opinion that arguments two and three merely attempt to relitigate what has already been decided, the court will not readdress those arguments here; the court will, however, discuss plaintiff's contentions with respect to arguments one, four, and five.[2]

### A.   The Court Relied Upon the Wrong Standard (Argument One)

Plaintiff argues that the court erred by adopting the burden-shifting approach the Second Circuit applies when engaging in the "otherwise qualified" inquiry under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701-797b (1994). Under the Second Circuit's approach, "the plaintiff bears the burden of proving that she is otherwise qualified; if an accommodation is needed, the plaintiff must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified." *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 139 (2nd Cir. 1995). To demonstrate that a particular accommodation is reasonable, "[i]t is enough for plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.* at 138. If plaintiff satisfies this prima facie burden, "the burden shifts to the employer to show that no reasonable accommodation is possible." *Gilbert v. Frank*, 949 F.2d 637, 642 (2nd Cir. 1991). "At this point the defendant's burden of persuading the fact finder

---

[2] With respect to plaintiff's argument that the October 29, 1992 amendments to the Rehabilitation Act incorporate the broader standards of the ADA, and thus, supersede any limitations imposed upon plaintiff's transfer rights under 29 C.F.R. § 1614.203, the court is of the opinion that defendants' reassignment obligations are defined by 29 C.F.R. § 1614.203(g).

that the proposed accommodation is unreasonable merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship." *Borkowski*, 63 F.3d at 138.

In reaching its decision to adopt the Second Circuit's approach, the court researched Eleventh Circuit case law and noted that at that time, this issue had not yet been addressed by the Eleventh Circuit. Plaintiff disagreed, and argued that the Second Circuit approach is contrary to Eleventh Circuit precedent. According to plaintiff, in *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993), the Eleventh Circuit established the rule that it is the defendant/employer, and not the plaintiff, who carries the initial burden on the issue of reasonable accommodation. In *Willis v. Conopco*, 108 F.3d 282, 284 (11th Cir. 1997), which was decided after plaintiff filed her Motion for Reconsideration, the Eleventh Circuit, stated: "[T]he issue of which party has the burden of proposing a concrete accommodation and establishing that the particular accommodation is reasonable is one of first impression for us . . . ." Thus, because this issue was first addressed by this Circuit in *Willis*, the court need not consider plaintiff's contention with respect to *Fitzpatrick v. City of Atlanta*. However, although the court was correct in noting that the reasonable accommodation issue had not been addressed by the Eleventh Circuit at the time of the Memorandum Opinion granting defendants' motion for summary judgment, the Eleventh Circuit's resolution of this issue in *Willis* necessitates a reconsideration of this court's decision to adopt the Second Circuit approach.

In *Willis*, plaintiff, who allegedly suffered from an immune system abnormality that prevented her from being exposed to certain chemicals in the work place, brought suit against

4

her employer under the Americans with Disabilities Act ("ADA").[3] *Id.* at 283. On appeal, plaintiff argued that the district court erred in granting defendant's motion for summary judgment because it required "her to produce evidence sufficient to establish a triable issue on the existence of a reasonable accommodation for her disability." *Id.* In rejecting this argument, the court held: "[A]n ADA plaintiff (1) as part of her burden of production, must identify an accommodation that would allow her to perform her job duties and (2) as part of her burden of proving her case, must establish that such an accommodation is reasonable." *Id.*

In reaching its decision in *Willis*, the court criticized the Second Circuit approach, stating:

> We know that some courts have required the plaintiff (as part of her initial burden of production) to introduce evidence of the existence of an accommodation, but have combined the questions of (a) whether the accommodation is reasonable and (b) whether it will impose an undue hardship on the employer into one question. Then the burden of proof (or the 'burden of nonpersuasion') on the one question has been put on the defendant employer. *See e.g. Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir. 1995). . . . Such an approach confuses an element of the plaintiff's case (reasonable accommodation) with an affirmative defense (undue burden) and effectively relieves the plaintiff of her obligation to prove her case.

*Willis*, 108 F.3d at 285-86. Because the Eleventh Circuit choose not to adopt the Second Circuit approach described in *Borkowski*, the court modifies its previous Memorandum Opinion and holds that "(1) as part of her burden or production, [plaintiff] must identify an

---

[3] Although *Willis* involved plaintiff's claims under the ADA, the *Willis* court adopted the approach taken by the D.C. Circuit in a case pursued under the Rehabilitation Act of 1973. *Willis*, 108 F.3d at 284 (citing *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C. Cir. 1993)).

accommodation that would allow her to perform her job duties and (2) as part of her burden of proving her case, must establish that such an accommodation is reasonable." *Id.* at 283. Here, plaintiff advocates a framework that is more favorable to her than *Borkowski*. As noted, the Eleventh Circuit rejected *Borkowski*, finding that it "effectively relieves the plaintiff of her obligation to prove her case." *Willis*, 108 F.3d at 286 (citation omitted). As noted in the court's Memorandum Opinion entered September 30, 1996, "[b]ecause plaintiff's position required a security clearance which she was unable to obtain, reasonable accommodation is not available for the Public Safety Officer position." (September 30, 1996 Memorandum Opinion at 16). Further, as the court concluded in its earlier opinion, defendant is not required to accommodate plaintiff by reassigning her to a position outside the nuclear organization of the TVA. (*Id.* at 18). Indeed, as discussed in Part II B of this Memorandum Opinion plaintiff cannot meet her burden, because all positions at the Browns Ferry Nuclear Facility require an S-1 security clearance. Applying *Willis* to the facts of this case, the court holds that plaintiff did not meet her initial burden of describing a reasonable accommodation that would allow her to perform the "essential functions" of any position within the nuclear organization of the TVA.

    **B.**    **Plaintiff Should be Given Additional Time to Conduct Discovery (Argument Four)**

As an additional argument, plaintiff contends that this court should reverse its prior ruling and allow her additional time to conduct discovery on the qualifications for, and essential functions of, the vacant positions for which she is arguably qualified. The court disagrees.

In its September 30, 1996, Memorandum Opinion, the court interpreted 29 C.F.R. § 1614.203(g), and held that summary judgment was appropriate, because plaintiff failed to satisfy her burden of demonstrating that there was a vacant position available at the Browns Ferry Nuclear Plant for which she was "otherwise qualified." In her Reply Brief in Support of her Motion for Reconsideration, plaintiff states that "while this Court appears to accept, as undisputed, that all relevant positions require a security clearance, defendants have failed to offer evidence supporting this assertion . . . ." *Id.* at 5. Although this argument may have had limited merit earlier in this litigation, defendants have submitted materials which eliminate any prior uncertainty that may have existed with respect to this issue.

On December 17, 1996, defendants filed, inter alia, excerpts from the transcript of the administrative hearing involving plaintiff's discrimination claims. During that hearing, defense counsel asked James Brazell, plaintiff's former supervisor and Browns Ferry Site Security Manager, whether all TVA Browns Ferry employees needed an S-1 clearance to work at the Browns Ferry Nuclear Facility; Mr. Brazell responded by stating, "yes." (EEOC Hearing Testimony of James Brazell, Materials Submitted with Defs.' Notice of Filing, Ex. 3 at 50.) Therefore, because plaintiff was terminated for being unable to retain an S-1 clearance, and because all positions at the Browns Ferry Nuclear Facility require an S-1 clearance, plaintiff will be unable to demonstrate that she is "otherwise qualified" for a position that satisfies the requirements of 29 C.F.R. § 1614.203(g). Additional discovery on this issue would simply make no difference to the outcome of this case.[4]

---

[4] As stated in the court's September 30, 1996 Memorandum Opinion, this court is without authority to review defendants' decision to deny plaintiff's security clearance, to require

7

C.  The Presence of Direct Evidence Renders Summary Judgment Inappropriate (Argument Five)

Finally, in her motion for reconsideration, plaintiff argues that summary judgment is inappropriate because she has presented direct evidence of discrimination.[5] While plaintiff is correct in asserting that "[a] defendant presented with direct evidence of discrimination in violation of Title VII can only successfully defend by showing by a preponderance of the evidence that the same decision would have been reached even without the discriminatory factor," *E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2 1067, 1071 (11th Cir. 1990), the court is of the opinion that in disability cases like the one presented here, the Title VII direct evidence analytical framework is inapplicable.

In the overwhelming majority of Title VII cases, courts follow two distinct evidentiary paths to determine the ultimate issue of defendant's discriminatory intent. First, when a plaintiff attempts to prove her claim through the presentation of circumstantial evidence, courts apply the familiar analytical framework established by the Supreme Court in *McDonnell*

---

defendants to allow plaintiff to remain in a position without a security clearance, or to alter a position so as not to require a security clearance. *See Department of Navy v. Egan*, 480 U.S. 518 (1988) (holding that the grant or denial of a security clearance is a sensitive and inherently discretionary judgment call that is committed by law to the appropriate Executive Branch agency having the necessary expertise in protecting classified information.)

[5] Plaintiff contends that she discussed the presence of direct evidence in this case throughout her Brief in Opposition to Defendant's Motion for Summary Judgment, and that she simply expanded upon it here. (Pl.'s Reply Br. in Supp. of its Mot. for Recons. of Summ. J. at 7-8). While plaintiff may have discussed facts that one could construe as direct evidence of discrimination, she neither mentioned the term direct evidence nor argued that summary judgment was inappropriate because of the presence of direct evidence. Because plaintiff presents this argument for the first time in her Motion for Reconsideration, the court is tempted to reject this argument summarily. Notwithstanding this temptation, however, the court will address plaintiff's argument.

8

*Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). Under the *McDonnell Douglas* test, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1556 (11th Cir. 1983). "[O]nce the plaintiff proves a prima facie case [of discrimination], the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision." *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987) (citations omitted). "To satisfy this burden of production, the 'defendant need not persuade the court that it was actually motivated by the proffered reasons . . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Trotter v. Board of Trustees of the Univ. of Alabama*, 91 F.3d 1449, 1455 (11th Cir. 1996) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). "If the defendant satisfies its burden of production, the plaintiff has an opportunity to show by a preponderance of the evidence that the reasons offered by the defendant are a mere pretext for discrimination . . . ." *Trotter*, 91 F.3d at 1455 (citation omitted).

On the other hand, "[w]hen there is direct evidence that discrimination was a motivating factor in the challenged employment decision, the appropriate analysis is different from that employed in a case where only circumstantial evidence is available." *Trotter*, 91 F.3d at 1453. (citing *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1556 (11th Cir. 1983). Instead, "[i]n a direct evidence case, the plaintiff must produce direct testimony that the employer acted with discriminatory motive, and must convince the trier of fact to accept the testimony." *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir. 1990) (citation omitted). Once plaintiff presents direct evidence that the employer acted with

9

discriminatory motive, and once this evidence is believed by the trier of fact, the employer can avoid liability only by proving "by a preponderance of the evidence that the same employment decision would have been reached in the absence of the discriminatory motive." *Burns v. Gadsden State Comm. College*, 908 F.2d 1512, 1518 (11th Cir. 1990).

Although the evidentiary methods of proof are well-established for discrimination claims brought pursuant to Title VII, "[d]efining and applying an appropriate framework for analyzing claims of discrimination based on an individual's disability has proven to be a difficult task." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). In *Burns v. City of Columbus, Dept. of Public Safety*, 91 F.3d 836 (6th Cir. 1996), the Sixth Circuit attempted to clarify some of the confusion, noting that there are several types of disability discrimination claims, "the most fundamental distinction between the types . . . turns on whether the grantee of federal funds acknowledges or relies on the handicap in making a decision adverse to the plaintiff." *Burns*, 91 F.3d at 841 (citation omitted). For example, under one type of disability discrimination claim, the defendant/employer responds to plaintiff's discrimination allegations by disclaiming any reliance on the employee's disability in making the adverse employment decision at issue. *Id.* Rather, the employer maintains that the questionable action was based upon a disability-neutral reason. *Id.* A hypothetical serves to illustrate the point.

Suppose an individual with a disability is terminated and brings suit under the Rehabilitation Act. In responding to plaintiff's allegations, the employer disclaims all reliance on the employee's disability, and instead responds by arguing that the plaintiff was terminated for a reason unrelated to the disability, such as the employee's practice of leaving work early.

10

"In Title VII parlance, this type of claim is sometimes called a 'pretextual disparate treatment' claim." *Id.* at 842. Although the elements of the prima facie case are modified to reflect the statutory requirements for proof of disability discrimination claims, the burden-shifting approach is identical to that of a Title VII circumstantial evidence case.[6] Once the plaintiff establishes a prima facie case, "[t]he defendant must then offer a legitimate explanation for its action. If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times." *Monette*, 90 F.3d at 1186-87 (citation omitted).

With respect to a second type of disability discrimination claim, "in some Rehabilitation Act cases, the grantee acknowledges or relies on the plaintiff's handicap in making its decision, but argues that the handicap is not the sole reason for its decision." *Burns*, 91 F.3d at 842. Under this scenario, "[t]he defendant will argue that the disability causes the plaintiff to be unqualified for the position or program, whether with or without reasonable accommodation of the disability." *Id.* In other words, defendant argues that the plaintiff is not "otherwise qualified" for the position at issue. In cases in which the defendant argues that

---

[6] In *Monette*, 90 F.3d at 1186, the Sixth Circuit stated that "[i]f the plaintiff seeks to establish his or her case indirectly, without direct proof of discrimination, the plaintiff may establish a prima facie case of discrimination by showing that: 1) he or she is disabled: 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." In a Rehabilitation Act case, the court would require plaintiff to demonstrate an additional prima facie element: that he or she worked for a program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service.

11

the plaintiff's disability prevents him or her from being "otherwise qualified" for the position at issue, defendant is, in essence, conceding that its decision was based, in part, on the plaintiff's disability. Accordingly, "when an employer admits (or the evidence establishes) that its decision was based upon the employee's disability, direct evidence of discrimination exists [as that term is defined in the Title VII context.] Because direct evidence of the employer's discrimination exists, application of the *McDonnell Douglas* burden-shifting framework is inappropriate." *Monette*, 90 F.3d at 1180.

Unlike the "typical" Title VII direct evidence case, however, and contrary to plaintiff's contentions, in a Rehabilitation Act case in which the employer argues that the plaintiff's disability renders him unqualified for the position, the defendant is not required to show that the same decision would have been reached in the absence of the discriminatory factor. The reason a defendant is not required to make this showing is that "[u]nlike Title VII cases, where race or sex will almost never be an acceptable reason for an employment decision adverse to a qualified employee, the Rehabilitation Act permits an employer to make a decision because of a handicap if the handicap is not the sole reason for the decision." *Burns*, 91 F.3d at 841.

Moreover, there are practical reasons why the Title VII direct evidence framework should not apply in the type of Rehabilitation Act case presently before the court. As stated, under the Rehabilitation Act, an employer is permitted to rely on an employee's disability in making an employment decision, so long as the person's disability is not the sole reason for the decision. In responding to plaintiff's allegations, a defendant/employer may argue that plaintiff's disability prevents him from being "otherwise qualified" for the position at issue. If the court were to require a defendant to demonstrate that the same decision would have been made in the

12

absence of the disability, the court would be erecting a barrier that no defendant could ever overcome; absent the disability, the decision would not have been made at all. Stated differently, when an employer makes an adverse employment decision because an individual's disability prevents him from being "otherwise qualified," that decision is based, in part, on the individual's disability. Because, however, the Rehabilitation Act permits this type of decision-making, and because such a decision would not be made in the absence of the disability, the Title VII direct evidence framework is inapplicable to cases involving this scenario.

In the present case, defendants maintain that direct evidence of discrimination is not present. Defendants acknowledge that plaintiff was terminated because she could not maintain her security clearance. In essence, defendants contend that because plaintiff could not pass the requisite psychological evaluation, her disability prevented her from being "otherwise qualified" for employment at the Browns Ferry Nuclear Plant. Again, since the evidence establishes that defendants relied, in part, on plaintiff's disability in making the adverse decision at issue, "direct evidence of discrimination" exists as that term is defined in the Title VII context. However, because the Title VII direct evidence framework is inapplicable to the instant case, and because plaintiff has not satisfied her prima facie burden of demonstrating that she is "otherwise qualified" for any position at the Browns Ferry Nuclear Plant, the court remains of the opinion that summary judgment was appropriately granted.

## III. CONCLUSION

Based on the foregoing reasons, the court is of the opinion that plaintiff's Motion for Reconsideration of Summary Judgment is due to be denied. An order denying plaintiff's Motion will be entered contemporaneously herewith.

DONE this 4th of August, 1997.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge

14